UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORIO HERRERA GONZALEZ (A# 074-127-820),

Petitioner,

v.

WARDEN, CALIFORNIA CITY DETENTION FACILITY,

Respondent.

No. 1:26-cv-05319-TLN-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner is a citizen and national of Cuba who entered the United States without inspection on an unknown date. ECF No. 7 at 7 (Form I-213). On November 5, 2018, an immigration judge ("IJ") ordered Petitioner removed. Id. at 10-11 (removal order). DHS subsequently released Petitioner on an Order of Supervision ("OSUP") due to a lack of significant likelihood of removal to Cuba in the reasonably foreseeable future. ECF No. 7 at 7. The date of his release is not provided in the record.

On September 29, 2025, Immigrations and Customs Enforcement ("ICE") revoked

Petitioner's OSUP pursuant to 8 C.F.R. § 241.13 based on his "criminal history, the current availability of detention space, and a significant likelihood of [his] removal taking place in the reasonably foreseeable future." ECF No. 7 at 13 (Notice of Revocation of Release). On January 6, 2026, ICE issued Petitioner a Notice of Removal to Mexico. Id. at 22-23. Petitioner refused to sign. Id. at 23. On March 18, 2026, ICE served Petitioner with a Form I-229(a) "Warning for Failure to Depart" with instructions regarding his requirement to assist in removal. Id. at 24-26. Petitioner refused to sign this form as well. Id.

Petitioner filed this § 2241 petition on July 10, 2026. The undersigned liberally construes the petition's primary allegation—that Petitioner's now ten-month detention has become unreasonably prolonged and that his removal to Cuba is not reasonably foreseeable—as a challenge under the Due Process Clause of the Fifth Amendment.[1] ECF No. 1 at 6-7. Petitioner adds that he has no pending criminal charges and that his separation from his family and community has caused him emotional and physical harms. Id. By way of relief, Petitioner seeks immediate release or, in the alternative, an individualized bond hearing before an immigration judge ("IJ"). Id. at 7.

Respondent opposes the petition and argues Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(1)(C) due to his refusal to cooperate with his removal to Mexico. ECF No. 7 at 3-4. Respondent further argues that under Zadvydas, Petitioner bears the burden of establishing that there is good reason to believe that his removal is not reasonably foreseeable. Respondent claims Petitioner cannot meet this burden where he has refused to cooperate with his removal. Respondent also asks the Court to judicially notice the fact the government of Mexico has a "'standing agreement' with the United States to accept Cuban Nationals, [resulting in] over 6,000 successful removals of Cuban Nationals in fiscal years 2025 and 2026." Id. at 2 (quoting Navarro v. Lyons, No. CV 26-10876-WGY, 2026 WL 816791, at *1 (D. Mass. Mar. 25, 2026)).

---

[1] A district judge in the Middle District of Florida dismissed Petitioner's prior § 2241 petition without prejudice as premature because his detention had not yet exceeded the six-month, presumptively reasonable period set in Zadvydas v. Davis, 533 U.S. 678 (2001). See Herrera Gonzalez v. Warden, North Fla. Detention Facility, et al., No. 3:26-cv-00024-JEP-MCR, ECF No. 12 (M.D. Fla., Mar. 19, 2026).

## II. Immigration Detention Framework After a Final Order of Removal

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After this 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.S.C. § 1231(a)(6)).

The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692. In order to avoid serious constitutional problems, Zadvydas read an implicit due process limitation into the immigration statute governing the detention of noncitizens subject to a final order of removal. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six month period of detention. Id. at 701. After that period, if a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

"Numerous courts have held, however, that the burden-shifting scheme of Zadvydas is only applicable to those noncitizens who had been detained and never released following a final order of removal." Ruiz-Acosta v. Cent. Valley Annex, No. 1:26-CV-04371-DAD-JDP (HC),

2026 WL 1846727, at *2 (E.D. Cal. June 26, 2026) (quoting Martinez v. Bondi, No. 1:25-cv-01633-EFB (HC), 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025)). Where, as here, Petitioner was issued a final order of removal, detained, and subsequently released and then redetained, "it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed" pursuant to 8 C.F.R. § 241.13(i)(2). Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); see also Roble v. Bondi, 803 F.Supp.3d 766, 772-73 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 811 F.Supp.3d 847, 860 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."); Nguyen v. Hyde, 788 F.Supp.3d 144, 149-150 (D. Mass. June 20, 2025); Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025).

**III. Analysis**

Petitioner has an order of removal dated November 5, 2018, that immediately became administratively final due to his waiver of appeal. See 8 C.F.R. § 1003.39 ("[T]he decision of the [IJ] becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first[.]"); 8 C.F.R. § 1241.1(b) (order of removal becomes final "[u]pon waiver of appeal by the respondent"). This shifted his detention to § 1231(a) and triggered the start of the 90-day removal period, which has long since lapsed. Accordingly, Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6).

Respondent's claim that Petitioner is instead subject to mandatory detention under 8 U.S.C. § 1231(a)(1)(C) is baseless. That provision permits tolling of the 90-day removal period if the noncitizen fails to "conspires or acts to prevent the [noncitizen's] removal *subject to an order of removal*." 8 U.S.C. § 1231(a)(1)(C) (emphasis added). Petitioner has no order of removal to Mexico. As a judge of this judicial district recently noted in a factually similar case: "Respondents' argument appears to be that, because petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained

indefinitely. This argument is frivolous[.]" Obando Vargas v. Balnche, et al., No. 1:26-CV-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026).

Respondent's reliance on Lema v. I.N.S., 341 F.3d 853, 857 (9th Cir. 2003) is misplaced for similar reasons. There, the Ninth Circuit upheld the continued § 1231(a)(1)(C) detention of an Ethiopian national who refused to effectuate his order of removal to Ethiopia. The Court explained that "the risk of indefinite detention that motivated the Supreme Court's statutory interpretation [of § 1231(a)(6)] in Zadvydas does not exist when the [noncitizen] . . . controls the clock." Lema, 341 F.3d at 856 (quoting Pelich v. I.N.S., 329 F.3d 1057, 1060 (9th Cir. 2003)). But here, Petitioner already received a Zadvydas release based on ICE's express finding that his removal to Cuba was not reasonably foreseeable. Any concern that Petitioner was delaying his removal to Cuba to manipulate the clock has long since passed. For all these reasons, 8 U.S.C. § 1231(a)(1)(C) does not authorize Petitioner's detention.

Respondent also argues Petitioner bears the burden of demonstrating that his removal to Mexico is not foreseeable. Based on the Petitioner's release on OSUP and ICE's revocation of that release in September 2025, the undersigned finds that the burden shifting framework of Zadvydas does not apply to this case. See Vu, 2025 WL 3114341, at *5. Instead, Respondent has the burden of demonstrating that there is a significant likelihood that the Petitioner may be removed to Mexico. See 8 C.F.R. § 241.13(i)(2).

An IJ ordered Petitioner removed to Cuba, but Respondent makes no attempt to demonstrate that his removal to Cuba is likely in the reasonably foreseeable future. Instead, Respondent asserts that Petitioner is subject to removal to the third country of Mexico because it has a "'standing agreement' with the United States to accept Cuban nationals. ECF No. 7 at 2. Because Respondent failed to provide the Court with a copy of this bilateral agreement, the undersigned denies the request to take judicial notice of it. Moreover, the successful third country removal of other Cuban nationals is not sufficient to demonstrate that Petitioner is specifically likely to be removed pursuant to this standing agreement. "[S]tanding alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico will accept [Petitioner] any time soon." Arenado-Borges v. Bondi, No. 2:25-cv-02193-JNW, 2025

WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025); see also Ruiz-Acosta, 2026 WL 1846727, at *3 (finding same where "respondents failed to indicate what steps the government has taken to effectuate petitioner's removal to Mexico or that Mexico is likely to accept this petitioner specifically.").

A great deal of emphasis is placed on Petitioner's consent to third country removal to Mexico in the parties' briefing. This suggests to the Court that there are specific criteria that must be met, of which the noncitizen's consent is one, before a Cuban national can be removed to Mexico. See Rodriguez-Fernandez v. Bondi, No. 2:26-cv-00170-TMC, 2026 WL 445562, at *3 (W.D. Wash. Feb. 17, 2026) (finding that the bilateral agreement between the U.S. and Mexico is contingent upon the noncitizens consent to be removed to Mexico). Ultimately, the undersigned does not find it necessary to address this specific criteria because Respondent does not identify any specific steps that they have taken **with the Mexican government** to arrange for Petitioner's removal to that country in the ten-plus months he has been detained. This does not meet Respondent's burden of demonstrating that there is a significant likelihood of Petitioner's removal to Mexico in the reasonably foreseeable future. Accordingly, Petitioner's detention is unlawful and he must be released. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (remedy is release upon a finding that removal was not reasonably foreseeable).

Finally, the undersigned notes that while the Notice of Revocation of Release cites Petitioner's "criminal history" as a basis for re-detention, Respondent's evidence shows only an August 28, 2018, arrest for driving without a valid driver's license where the charge was later dropped.[2] See ECF No. 7 at 7 (Form I-213). Even assuming a dropped charge some seven years prior could justify the revocation of Petitioner's OSUP under 8 C.F.R. § 241.13(i)(1), "there is no indication that Respondents followed the necessary procedures to revoke Petitioner's release by providing him an opportunity to contest that he did not violate his order of supervision." Garcia

---

[2] Petitioner also briefly mentions a 1999 arrest in Jefferson County, Kentucky, but provides a March 26, 2026, letter from the Jefferson County Circuit Court Clerk confirming that Petitioner has no criminal record in that jurisdiction. ECF No. 1 at 16-17.

Bonilla v. Warden, No. 1:26-CV-02765-DJC-AC, 2026 WL 1113880, at *1 (E.D. Cal. Apr. 24, 2026) (citing 8 C.F.R. § 241.13(i)(3)).

For all these reasons, the undersigned recommends that the § 2241 petition be granted and that Respondent be ordered to release Petitioner immediately. Respondent may place Petitioner on the same conditions of supervision in place prior to his re-detention in September 2025. See Zadvydas, 533 U.S. at 700 (holding that a noncitizen's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED on its sole claim that his prolonged, post-removal detention violates due process.

2. Respondent be directed to immediately release Petitioner GREGORIO HERRERA GONZALEZ (A# 074-127-820) on the same conditions of release in place at the time of his re-detention on September 29, 2025.

3. Respondent be directed to file a notice of compliance within three (3) days of any order adopting these findings and recommendations.

4. Respondent be prohibited from re-detaining Petitioner without first complying with 8 U.S.C. § 241.13.

5. The Clerk of the Court be directed to:

    a. Serve the California City Correctional Facility with a copy of any order of release; and

    b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties

have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 6, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE